Next case is Mahad v. Illinois Health The issue case here is an administrative review and whether or not Mahad and Mary and I stand or have standing to appeal the decision. I'm better at cases that require how many feet from the road before you have the exit. This is somewhat more complex. But if you read the briefs of the defense, it's extremely complex because the conclusion you have to reach is that nobody can appeal the decision. The underlying facts are that Mary and I, there was a surgery center, a modem, a percentage of it still does. The majority interest was sold to Mr. Osmond who is an attorney through his entity. Mahad objected to the certificate of exemption at the level, participated in the hearing and testified at a local part of the hearing and then at the hearing itself in Joliet. And the decision was against his position in favor of Osmond's to grant the certificate of exemption. Osmond, there was a suit filed that this court ruled on that said we didn't have standing to enjoin that conduct. And in that case, the argument by the defense was, well, you can't raise it through a lawsuit, through a suit to enjoin. You have to appeal the administrative decision. And so when the administrative decision is appealed, and the argument is you can't appeal the administrative decision either. If you look at the argument, there's no one. The way the state interprets the rules is only Osmond could appeal, and he could only appeal if he lost, and no one else can appeal his certificate of exemption. I suggest that that interpretation of the law is wrong for lots of different reasons. The act itself, first of all, excuse me, before I get to that, one of the things that confound me about this entire process is at the hearing level in front of the administrative agency, the issue as to who did or did not have standing was never raised. There was never an opportunity by Ahmad or anybody else at that hearing to say we have standing to be here today. It was presumed that they did. After the hearing is over, then the appeal has to be based on the record, on the record which contains no facts and which addressed no issues pertaining to who has standing. So if you look at the record itself, the record pertained to whether Osmond could qualify for the exemption, not whether anybody else had the right to object to it. Other people did. Ahmad did. Ahmad appeared and did object. But it was never tried. It's argued now, well, you can't offer testimony now different than that which was contained in the record because you're bound by the record. So there's no way you could ever have a hearing and ever adjudicate who has standing unless it can be done at the circuit court level. But here, I don't know we have to address all these issues. The act itself says, 20-00-ILCS-390-3960-11 says that people who have standing include any person who participated in the hearing, any person who resides in the area, and any person who regularly uses health care facilities. It's undisputed that Ahmad meets all three of those criteria. The defense is that only competing health care facilities can have standing to appeal. And there's not a single case that says only competing health care facilities have standing. There are lots of cases that say competing health care facilities have standing and that some attempted to appeal based on the claim they were competing health care didn't have standing. But there's not a single case that says what the defense says it says, that is that only health care can do. So Ahmad meets the requirements of residing in the area, regularly using a health care facility, and participating in the underlying administrative process. Those are the requirements of the statute and the requirements of 77 Illinois Administrative Code 1130-1040. Three of those are met there. The other issue then is the term, if that doesn't suffice, and it's the definition of the term adversely affected. And that term has to be decided by this court. There's a presumption under the right to appeal an administrative decision. The facts of this case are that the control of the surgery center was taken over by Osman, who is an attorney, not licensed to practice medicine. The facts are that Osman and Ahmad are partners. Ahmad is a limited partner in that partnership that exists today. And that Osman, as the person who runs the facility, manages the facility, owns the facility, has sued Ahmad, who is a physician on staff at that facility. And that's in our complaint. That didn't appear in the administrative record. It's in the complaint. Ahmad's position is that he cannot practice medicine at this facility under Osman, who is not licensed to practice medicine. That doing so makes him guilty also of participating in the unlicensed practice of medicine. The defense says, oh, that's not an issue. That doesn't exist. There's lots of case law on the corporate practice of medicine or the practice of medicine by unlicensed individuals. And all of them hold that it's not, it cannot be done except under certain circumstances. There's an exception for hospitals. There's an exception for hospital-owned or affiliated corporations. There is not one exception for surgery centers. And we have here Ahmad and members of his practice being forced to either not practice there at all, which is what they've chosen to do, or practice unethically and illegally. The definition of adversely affected by the common law would certainly cover that area. There's a recent case, I didn't cite my brief, but this course in radio state of hearing, they decided the issue of standing in a mistake case. And that language applies here. And the other case law, of course, applies here as well. Ahmad, as a resident of the area, as one who uses the facilities, and participated below has standing. But he's also an adversely affected person because his ability to practice in that facility, by care for his patients in Marion, is gone because of the law transpired because of the illegal effect. We'd ask that the case be reversed and remanded for hearings just as what I would suggest we do. Thank you. May it please the court, counsel. I probably don't need to introduce myself, but I'm Ronald Lee Osmond, and I'm representing in this case Surgery Central LLC, the Marion Holdings LLC, and myself individually. I want to set the stage a little bit so that we can understand a little bit better. From hearing Mr. Womack's argument, you would believe that this is a case of first impression. It certainly is not. This is a request for a review of an administrative hearing under Section 20 ILCS 3960. Now, I want to read that section to the court because I believe Mr. Womack inadvertently has misstated what it says. It says, Any person who is adversely affected by a final decision of the State Board may have such decision judicially reviewed. Provisions of the administrative review law as now are hereinafter amended, cite, and the rules adopted pursuant thereto shall apply to and govern all proceedings of the judicial review of final administrative decisions of the State Board. The term administrative decisions is as defined in Section 3101 of the Civil Code and Civil Procedure. Nothing in the statute that talks about someone that lives in the area or is a health care provider or is a health care consumer being a party that can bring an action under 20 ILCS 3960. That language comes from the administrative code of the Illinois Department of Public Health. The Illinois Department of Public Health regulates surgery centers. That comes from the Illinois Code, and it comes from 77 Illinois Act End Code 1130.1040. In that code section, it certainly says that those categories that I just described are, if they have intervened in the proceedings, are deemed to have been adversely affected persons. However, you have to back up a step to 77 Illinois Admin Code 1130.101 as to who has a right to an administrative hearing and applicable rules. The difference between a hearing and a public comment hearing, and we'll talk about that in a little bit, B says a person whose application for a permit, a renewal thereof, or a certificate of recognition is denied or whose permit or certificate of recognition is revoked by the Illinois Health Facilities Planning Board shall be afforded an opportunity for a hearing before a hearing officer. Such hearings shall be governed by this part. So in order to have a hearing, quote, hearing, you have to have been either application for permit or renewal has been denied. Now let's keep in mind that we're not talking about an application for a certificate of need to open a surgery center. What we're talking about is a ministerial duty that could be undertaken by the chairman or their board of a certificate of exemption of transfer of ownership. This facility's had a certificate of need, the same one, since 1988. This is, and has had transfer of ownership, the record will show, three times before. This is a ministerial duty. Counsel for the state will explain to you, I believe, that it's mandatory as long as the requirements are met according to the requirements are met, it's mandatory to have no discretion. There's nothing in the rules and regulations that talks about corporate practice of medicine, whether or not I'm a bad person. None of that is in there. And let's talk about that just for a second. This is de novo, and you will see in the record there is no adjudication in regards to the corporate practice of medicine. There's no adjudication about the claims, it's all still being litigated, about the claims of inducement. There's no adjudication about any public policy violation or cause of indemnification. That's all allegations unsupported by any fact or any fact-finding body. There's absolutely nothing in the record for this court to base a decision on based upon those items. Now, in, and I want to touch on this just a little bit because of the, let me back up just a little bit. The issue then, the issue then is whether or not the certificate of need hearing versus the certificate of exemption for change of ownership, notwithstanding that, Mr. Womack says in the brief, he goes to great detail, he didn't talk about it today, about a federal registration, a federal register requirement that cites some language. And that's in what I call the Dimensions Case 2, which is the 1999 case. And I want to just very briefly touch on this because in that case, the federal requirement, oh, I'm sorry, I apologize, too many cases. That's in the Manor case, which is one of the cases most often cited in the brief. In the Manor case, they cite, and the Manor case is a 1984 case. He cites a federal regulation that has language that, if you read it very quickly, seems to say that if there's a, quote, exemption, that then any person who participated in the proceedings has standing. This has been repealed in 1987. There's subsequent cases, the two-dimension cases in the Cornell case, that have not held that way at all. Notwithstanding it has been repealed and should not be considered at all, when you look at the language and understand, when the federal government said an application with respect to a Certificate of Need or an application for an exemption, they're talking about an exemption from a Certificate of Need process. The states, various states, have various rules and regulations. And even in Illinois, you can be exempt from a CON certificate. A surgeon can do surgery in his office if he meets certain criteria. He's exempt. That's called an exemption. That's what the federal government was talking about there. Not an exemption of ownership through a ministerial duty of the Illinois Department of Public Health. They're not applicable at all. And when you talk about the proceedings before the state agency, it's talking about the CON proceedings, the hearing, where people come in, they're put on oath, they testify, they're cross-examined. In this case, when the Certificate of Exemption of Ownership was applied for, what happened was Dr. Ahmad, in accordance with the regulations, requested a public hearing. That's to give comments to the board and the chairman so they can determine the public comments. They had one hearing, and then at the hearing, they had another public comment. No cross-examination, no evidence given. It was, again, the board fulfilling its ministerial duty to listen to the comments. I believe counsel will tell you that if the exemption is complete on its face, and it meets all the criteria, then the board has to, because the language says, not may, not could, not may. So that's what happened here. And if you read the Dimensions case, the issues then that Mr. Womack raises is that we'll give them an assumption that, quote, that, you know, that they're interested because they have a substantially effective interest. The First Dimension case talks about that. And in the First Dimensions case, they say, if you are a competing healthcare facility, this is under 20 ILCS 3960, you're a competing facility, you're substantially effective. It's a line of cases only. But it also says, mere participation in the public hearing does not give you standing. And it also says that the Illinois Department of Public Health sections in 77 and ENCODE that discusses effective parties and being someone in the area do not apply because that's only in the instance that someone has been denied a permit. So the Dimensions case, one and two, as I call them, a 98 case and a 99 case, have addressed every issue that Mr. Womack has raised. And they've addressed it and said, public hearing doesn't give you any standing. You have to be a competing enterprise, which Dr. Ahmad did not. And they said that the language Mr. Womack wants to hang on to say that they have standing and bootstrapped that up to 20 ILCS is of no moment. Directly on point. The Dimensions 2 then comes in. And again, this is another competing facility. And in what I'm calling Dimensions 1, the court found that they were a competing facility. They found they had standing. And then they denied it because they said that the Illinois Department of Public Health didn't abuse their discretion. In Dimensions 2, there was another facility that Dimensions was suing. And again, they found that Dimensions was a competitor. And then they talked about whether or not they were actually competing. And they discussed the Illinois Department of Public Health rule that if it's over 30 minutes in drive, it's not competing. And that's in Dimensions 2. Now, if this court were to decide, well, we really believe that 20 ICS 3960, when they say adversely affected, means someone within the area or a health care consumer. Dr. Ahmad's definitely not a competitor. He's a part owner. If you decide that, then you have to look at the record. There's nothing in the record to tell you where Dr. Ahmad lives. There's nothing in the record to tell you how many minutes it is from his home to the surgery center. There's nothing in the record to tell you where Dr. Ahmad gets his medical care. It's completely devoid of that. No map. There's no testimony. Why is that? Because it's not relevant to a change of ownership of an existing facility that already has its certificate of need. The state of Illinois has set out the criteria for that. And as long as you meet it, then you're entitled to do it. Now, Dr. Ahmad, Mr. Womack, wants to lead you to believe that, and he uses the catch-22 in his brief, that there's no way out for him. Absolutely he is. 20 ILCS, he just has to show that he's adversely affected. And they fail to do that. There's nothing in the record that's there. Now, one final note on the corporate practice of medicine red herring. Hearing a lot about that. It's of no moment to the standing issue. Mr. Womack's trying to bootstrap it in and say that Dr. Ahmad's adversely affected because if he practices in the same place he's been practicing for 15 years, only I own the majority interest through controlled LLCs, that he's somehow violating the corporate practice of medicine. And for that proposition, he cites the Berlin case and its progeny, the Carter case. And then he somehow says that that would be the corporate practice of medicine because as an owner, part owner, I'm practicing medicine. Now, that allegation's been out there for two years now, and people that are in charge of this, two agencies, the Illinois Department of Public Health is the one that administers the rules and regulations for surgery centers after the certificate of need is given and built. They then lose jurisdiction. Illinois Department of Public Health then regulates the surgery centers. The Medical Practice Act and the Department of Registration and Education regulates the positions in regards to the corporate practice of medicine. When you look at the Berlin case and the Carter case, and they're the similar cases, they're cases where a doctor had a contract with a hospital in Berlin and with a not-for-profit in Carter that had a non-compete clause in it, and they wanted out of the contract. All right. I'm done?  Thank you. Thank you, Your Honor. I apologize. All right. If you'll please record Tim McPike, Assistant Attorney General of the Health Care Facilities Board. Mr. McPike, do you have five minutes? Thank you. I just will rest on my brief for most of my points. I just want to specifically address Dr. Ahmad's claim that Mr. Osmond's purported inducement to breach a contract somehow is an interest under Section 11 of the Act that would grant standing. That's clearly not right for the primary reason that that type of a claim, this would be a tortious interference claim or inducement to breach contract claim, is not within the purview of the Act. The Board would have no authority under the Act to determine that matter, nor under the regulations is it an exemption requirement or a review requirement. And in our supplementary appendix to our brief, we give you the relevant regulations, the 77 Administrative Code 1130-560, which says the Board must grant the exemption or tell the applicant that the exemption is denied for failure to meet the exemption requirements. So the Board only has the authority to deny an exemption for failure to meet the exemption requirements. Now if you look at those exemption requirements, there's actually two. There's the review criteria, again in our supplementary appendix, 77 Administrative Code 1110-240. Those are the review criteria for the exemption. And then 77 1130-5 or period 520, those are the exemption requirements. If you read the exemption requirements in there, the only thing that even comes close to this type of a claim about tortious interference, contract, bad acts by the applicant, the only thing that even comes close to that would not apply to this, and that is 1130.520.3. And that states that the applicant must certify that there's been no adverse action against any health care facility owned by the applicant. There would be no adverse action by a court or an administrative agency or the federal regulatory agency. Well, this claim about I'm a rejected suitor just doesn't fall under that criteria. So the Board's main interest here is to assert to the court that we have no authority to adjudicate that type of issue, and therefore it cannot be, as a matter of law, the type of interest that would be an affected interest under Section 11 of the Act. If there are no further questions, thank you. We ask that the Court affirm the Circuit Court's decision upholding the Board's decision. Mr. Plott, counsel. First of all, we've had a comment online for probably 50 years. He's never called me mister. I admire that. I'm not going to ask what he has called you. I'm sorry? I'm not going to ask what he has called you. I'm glad. It would be embarrassing and probably inaccurate, but I'm glad. But the issue, I'm amazed at what I hear in the argument. The State of Illinois says we have no authority to decide whether or not someone who is not licensed to practice medicine is in fact practicing medicine. In the public hearing, and Mr. Osmond used that term, hearing, in his argument to you as well, in the public hearing, one of the issues came up about are we going to take care of people that can't afford to pay. Mr. Osmond, in a very lawful manner, says I'll make sure that we do that. Well, the only problem is he doesn't do surgery. He runs the place. Is he going to tell the surgeons on whom they have to perform procedures? And the answer, according to what he says, is yes, he's going to do that. There is no doubt that controlling the surgery center, contracting with the anesthesiologists, contracting with the doctors, granting privileges to doctors to be on staff there, all of that constitutes the practice of medicine. All of that constitutes the practice of medicine. In Illinois, the law is very, very clear. Going back to Berlin, in all cases following, is that Mr. Osmond is not licensed to practice medicine and therefore can't practice. Now, this agency granted a certificate of exemption claiming that they had no choice in the matter, and what they've done is they've granted an exemption to someone who's not licensed to practice medicine. They're breaking the law. They're breaking the law outright when they do that. If he can't practice medicine, they cannot. How can he run the entire operation, which is exactly what he's doing, which is what Osmond does not want to be a part of. It's illegal. It's against the law of Illinois for that to happen. This agency looks the other way. If you look at the agencies that are the agencies that have been granted these licenses, there's a lot of them that are not licensed to practice medicine. It's a big deal. But it doesn't make any difference here. I don't care how many times they've made a mistake. They've made a mistake here. When they have the certificate of exemption hearing, they have to certify that all of the qualifications have been met. If he were a convicted felon living out of state, living in Illinois, is it going to make any difference according to the state's position? Absolutely not. This is the same thing. He doesn't meet the qualifications to own the facility. It's just that simple. And someone who practices at that facility has the right to be able to practice medicine in an environment where he's not breaking ethical rules and regulations or breaking the law. Osmond cannot tell him what to do ethically. He says in his opening statement that he's going to do that. He says he's not practicing medicine. Of course he is. Who makes the decision about who hires the anesthesiologist? Is that what the criteria are for other people in the facility? Every aspect of this is a surgical center. Every aspect of this is the same as a hospital in the operating room, except the hospital is licensed and has an existing board and they meet the law. But no, I can't go out tomorrow and put Joe's surgical center and run it because I'm not a medical doctor. I'm not licensed. Neither can Osmond. And when you hear this argument that nobody has the right to appeal, who then protects the public from a clear-cut illegal operation? You can't get any more illegal than this is. Osmond is practicing medicine. Osmond owns the center. The one is mine to the other. And the board ignores that. And then they argue, well, you don't have standing. There's not a case anywhere that says that. When you look at the term standing, it means adversely affected. A mob is adversely affected because he practices there and doesn't want to anymore because his partner has also filed suit against him and malpracticed him. But it's bigger than that. He's the one that hires the anesthesiologist. A mob may not want to work with that particular anesthesiologist, but the physician may not buy a mob but buy Osmond. The whole thing is exactly like what happened in Carter Shields where the right to control the doctor by a non-licensed doctor, non-licensed physician, is illegal. And that's why a mob has standing under the common law, under the statute, and under the rules to appeal this decision. This argument we talked about briefly earlier on, you can't appeal a certificate of exemption. Well, the law says that you can't in that manner. The argument Mr. Osmond made about the Banner case, he said it's been repealed. The Illinois statute hasn't been changed or modified, nor are the regulations. They're still in effect just like they were in the Banner case in the past. The federal regulations have been changed, but the history of the legislation was based on the existence of the regulations at that time. That's the history of the legislation that says the purpose of this legislation is to allow people to appeal to make sure there's a full, fair hearing on these issues because the practice of medicine is an important issue. And this agency doesn't have the power to give that power to a non-lawyer, although they are, in effect, doing that. It's wrong that we should be the trial court speakers. Thank you. Thank you, Mr. Phillips. That's all for today. Thank you for your briefs. Thank you to the press. Thank you for about 15 minutes. Thank you for about 15 minutes.